IN THE UNITED STATES DISCTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| WAYNE B. HERRMANN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. <u>11-1123-RDR-KGS</u> |
| | ) | |
| RAIN LINK, INC., a Kansas Corporation; | ) | |
| and DENNIS DIXON and SHONDA CHAPA, | ) | |
| individually and in their capacity as Officers, | ) | |
| Directors, and Shareholders in Rain Link, Inc., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## **COMPLAINT**

### INTRODUCTION

Plaintiff, Wayne B. Herrmann, is a quadriplegic. He graduated from college and began working for Stan's Sprinklers in 1994. For nearly fifteen years, Herrmann found satisfaction and fulfillment in his successful employment at Stan's Sprinklers and its successor, Rain Link, Inc. But in November 2008, Herrmann was forced to take a four-month leave of absence from work due to his disability. Little did he know then that he had worked his last days at Rain Link.

In March and April 2009, Herrmann repeatedly informed Rain Link that his doctor had released him to return to work. But while Herrmann was on his brief, company-approved leave, Rain Link moved to a new office building without wheelchair access and, based on information and belief, hired a non-disabled replacement for Herrmann. When Herrmann tried to return to work, Rain Link refused to take any action to accommodate his disability. Rain Link could have installed a simple wheelchair ramp to allow Herrmann to cross the two or three steps leading to the building's entrance, but it refused. Instead of accommodating Herrmann's disability, Rain

Link discharged him because of it.   Herrmann now seeks to remedy Rain Link's unlawful discriminatory and retaliatory actions.

Rain Link's unlawful termination was compounded by the unlawful and oppressive actions of Dennis Dixon and Shonda Chapa, who control the Board of Directors and have a controlling interest in Rain Link stock.  In light of that control, Dixon and Chapa owed fiduciary duties to Herrmann, as a minority stockholder.  Dixon and Chapa breached their fiduciary duties, among other ways, by denying Herrmann all benefit of his stock ownership, terminating his employment, offering less-than-fair-value for his shares, and paying themselves excessive compensation in salaries and bonuses, without paying Herrmann a single cent in more than two years.  Such oppressive treatment of a minority stockholder is intolerable and unlawful.

PARTIES

1.      Plaintiff Wayne B. Herrmann ("Herrmann") is an individual residing in the State of Kansas.  At all relevant times prior to his unlawful termination on May 6, 2009, Hermann was an employee of Rain Link and its predecessor, Stan's Sprinklers.  Herrmann was also a director on Rain Link's board, and he remains a one-third owner of Rain-Link stock.

2.      Defendant Rain Link, Inc. ("Rain Link") is a corporation incorporated under the laws of and doing business in the State of Kansas.  Rain Link's corporate office is located at 3656 South West Street, Wichita, Kansas 67217.  Rain Link's corporate filing with the Kansas Secretary of State, as of April 11, 2011, is outdated and incorrect.  It identifies Rain Link's registered agent as Wayne Herrmann, located at 5817 N. Broadway, Wichita, KS 67219—Rain Link's corporate address prior to 2009.

3.      Rain Link provides lawn irrigation services to its customers, and its purchases of goods and equipment and its provision of services affect commerce.

4.      Rain Link is an employer and a covered entity as defined by the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.*

5.      Rain Link is an employer as defined by the Kansas Act Against Discrimination (KAAD), K.S.A. § 44-1001, *et seq.*

6.      Defendant Dennis Dixon ("Dixon") is a resident of Kansas with a usual place of business in Wichita, Kansas.  He is sued in his individual capacity as well as in his capacity as President, Director, and one-third shareholder of Rain Link.

7.      Defendant Shonda Chapa ("Chapa") is a resident of Kansas with a usual place of business in Wichita, Kansas.  She is sued in her individual capacity as well as in her capacity as Vice-President, Director, and one-third shareholder of Rain Link.

## JURISDICTION AND VENUE

8.      This Court has personal jurisdiction over Rain Link because it is a resident of Kansas and does business in Kansas.

9.      This Court has subject-matter jurisdiction over Herrmann's federal law ADA claims pursuant to 28 U.S.C. § 1331.

10.     This Court has supplemental jurisdiction over Herrmann's state law claims pursuant to 28 U.S.C. § 1367.

11.     Venue in this District is proper pursuant to 28 U.S.C. § 1391, because Rain Link is a corporation who maintains a place of business in this District and all of the events or omissions alleged and described in this Complaint occurred in this District.

## ADMINISTRATIVE PROCEEDING

12.     On June 10, 2009, Herrmann filed a timely administrative complaint with the Kansas Human Rights Commission ("KHRC") (KHRC Case No. 32865-09W), which was

3

timely cross-filed with the Equal Employment Opportunity Commission ("EEOC") (EEOC Charge No. 28D-2009-00772), alleging disability discrimination and retaliation under the ADA and KAAD.

13.    On March 16, 2011, the EEOC issued Herrmann a Notice of Right to Sue, at his request, pursuant to 42 U.S.C. § 2000e-5(f)(1).

14.    On April 4, 2011, the KHRC dismissed the administrative complaint at Herrmann's request, pursuant to K.S.A. § 44-1005(i).  Due to an error in the KHRC's dismissal letter, Herrmann filed a Petition for Reconsideration on April 11, 2011, and the KHRC mailed a corrected dismissal letter (also dated April 4, 2011), pursuant to K.S.A. § 44-1005(i), on April 12, 2011.

15.    Herrmann exhausted the administrative remedies for his state and federal disability discrimination and retaliation claims prior to bringing this action against Rain Link.

F<small>ACTS</small>

Herrmann's Disability

16.    Herrmann was born on January 6, 1961.

17.    Herrmann suffered a broken neck in 1979, which caused him to become paralyzed from the chest down; he has some use of his arms, but he has no feeling in his fingers. Complications from this paralysis include, on occasion, decubitus ulcers.  Herrmann is confined to a wheel chair with no ability to walk, stand, or carry on activities that require walking or standing, and he wears a hand brace, which enables him to write.

18.    At all relevant times, Herrmann had a disability, as defined by the ADA, 42 U.S.C. § 12101, *et seq.*, and by the KAAD, K.S.A. § 44-1001, *et seq.*, because he had a physical

4

impairment that substantially limited one or more major life activities, he had a record of such an impairment, and was regarded as having such an impairment.

Herrmann's Employment with Rain Link

19.     Hermann was employed at Rain Link and its predecessor companies for nearly fifteen years.  He began his employment with Stan's Sprinklers, Rain Link's predecessor, upon his graduation from college in May 1994 and remained employed at Rain Link until his unlawful termination in May 2009.

20.     Herrmann had been employed by Rain Link and its predecessor as a task coordinator since approximately 1996 or 1997.  His duties included but were not limited to: coordinating both commercial and residential installations, including buying all necessary permits, calling in locates for underground utilities, and coordinating electrical hookups on well installations; answering the phone for installation and service calls; analyzing and pricing proposed residential jobs and installations; typing contracts and thank-you letters; making appointments for the estimator to present bids; maintaining a computer database of installation information for the business; assisting in work schedules; working with general contractors and landscapers in commercial and residential installations; preparing invoices; and generally performing much of Rain Link's installation-related office work.

21.     Herrmann, Dixon, and Mark Marnell ("Marnell") bought out Stan's Sprinklers and formed Rain Link, Inc., in 2000.  Dixon was President, and Marnell was Vice-President, in the new corporation.

22.     On November 2, 2000, Herrmann, Dixon, and Marnell executed a Buy-Sell Agreement, under which each of the three individuals was granted 100 shares of Rain Link's corporate stock.

23.     Herrmann, Dixon, and Marnell founded and invested in Rain Link with the reasonable expectation that they would remain key employees at Rain Link with a voice in business decisions.

24.     Since 2000, Herrmann has been a minority stockholder in Rain Link.  As such, he does not control the management decisions of the corporation.

25.     In 2002, the Buy-Sell Agreement was amended to add Chapa as a fourth stockholder by issuing her 100 shares of Rain Link stock.

26.     In approximately 2004, Rain Link fired Marnell.

27.     Using funds provided by Rain Link, Herrmann bought Marnell's 100 Rain Link shares for $150,000, and assigned them to Rain Link.

28.     Chapa replaced Marnell as Vice-President.

29.     Rain Link has never declared a dividend.

30.     Rain Link pays an annual salary to its stockholder-employees.

31.     Rain Link annually pays as a "bonus" to its stockholder-employees the individual's pro-rata (based on stock ownership) share of annual net income in excess of approximately $50,000, thereby reducing Rain Link's taxable income.

32.     Rain Link's annual "bonus" is a constructive dividend, nominally paid for tax purposes as a "bonus" to stockholder-employees in lieu of a "dividend" to stockholders.

33.     Herrmann received his share of the "bonus" attributable to Rain Link's net income in 2007 and in prior years, but has not received any bonus or dividend payment from Rain Link since then.

34.     Rain Link's 2008 financial statement shows it paid $24,000 in bonuses attributable to Rain Link's 2008 net income.

35.     On information and belief, Rain Link paid "bonuses" to stockholder-employees in 2009 and 2010.

Rain Link's Unlawful Discrimination and Retaliation

36.     Herrmann was qualified to perform the essential functions of the task coordinator position at Rain Link, with reasonable accommodations, as demonstrated by his nearly fifteen-year employment with Rain Link and its predecessor.

37.     Prior to a November 2008 hospitalization, Herrmann gave Rain Link notice that he would need time off from work due to his disability.  Rain Link authorized his absence, and Herrmann kept his employer apprised of his medical condition throughout his authorized period of leave.

38.     Herrmann continued to be employed and to draw his regular salary from Rain Link through the end of 2008 and until January 16, 2009.

39.     In a letter dated January 28, 2009, Rain Link's counsel informed Herrmann that Rain Link was placing him on unpaid medical leave of absence, retroactively effective as of January 16, 2009.  Herrmann has not been paid one cent from Rain Link, as an employee or shareholder, since then.

40.     While Herrmann was away from work due to his disability, Rain Link moved its business office from its former location, at 5817 N. Broadway Street, Wichita, Kansas 67219 ("Broadway Office") to its present location at 3656 South West Street, Wichita, Kansas 67217 ("West Office").  The Broadway Office was wheelchair-accessible, which enabled Herrmann to enter the building for work, but the West Office is not, preventing Herrmann from entering it.

41.     On Wednesday, March 25, 2009, Herrmann called Rain Link and spoke with Chapa.  Herrmann told Chapa that his doctor had released him to return to work for four to six

hours per day.  Chapa replied that she was going to be out of the office the rest of the week but that she would discuss returning Herrmann to work the following week with Dixon, Rain Link's President.  She promised to call Herrmann back.

42.     Neither Chapa nor anyone else representing Rain Link called Herrmann back.

43.     During the week of March 29 to April 4, 2009, Herrmann developed an infection due to his November 2008 surgery and was prescribed a course of antibiotics.

44.     On April 15, 2009, Herrmann's doctor again released Herrmann to return to work for four to six hours per day.

45.     Notwithstanding his disabilities, Herrmann had been able to perform the essential functions of his task coordinator position at Rain Link for more than a decade, until his hospitalization in November 2008, and, with reasonable accommodations (a simple wheelchair ramp and a modified work schedule), he could have performed those essential functions at the time of his doctor's medical release on approximately March 25, 2009, and at all times since his doctor's subsequent release, dated April 15, 2009.

46.     On Friday, April 17, 2009, Herrmann left a telephone message for Chapa, asking her to return his call and informing her that, if he did not hear from her, he planned to report to work on Monday, April 20, 2009, between 7:00 and 7:15 a.m.

47.     On the morning of April 20, 2009, while Herrmann was on his way to work, Dixon called Herrmann on his Rain-Link owned and provided cell phone, instructing him not to report to work because the West Office was not wheelchair-accessible, which prevented Herrmann from entering the building, and "because someone else was sitting at [his] desk."

8

48.     At approximately 5:30 p.m. that afternoon, April 20, 2009, Herrmann called Dixon again to inquire whether the company would allow him to report to work the next day, April 21.  No one from Rain Link returned his call that day.

49.     On April 21, 2009, Dixon called Herrmann and told him not to return to work until "we" had talked with "our" lawyers.  Herrmann explained that he had a release to return to work and was able to perform his duties and asked why "they" needed to talk to Rain Link's lawyers.  Dixon said he would let Herrmann know, but Dixon never contacted Herrmann again.

50.     On April 29, 2009, Herrmann's counsel sent a letter to Rain Link's counsel, reiterating Herrmann's request that Rain Link provide wheelchair access up the two-or-three-step West Office entrance and that Rain Link return Herrmann to work.

51.     On May 6, 2009, Herrmann's counsel again reiterated Herrmann's request, in a letter to Rain Link's counsel, that Rain Link accommodate Herrmann's disability by providing wheelchair access to the West Office and by returning Herrmann to work under a modified work schedule (four to six hours per day).

52.     On May 6, 2009, Rain Link, through its counsel, finally responded to Herrmann's repeated requests for accommodation and to return to work by terminating Herrmann's employment, effective immediately.

53.     If Rain Link had not unlawfully terminated Herrmann on May 6, 2009, Herrmann would have been able to return work fully, without the six hour limitation, sometime in May 2009.

54.     Upon information and belief, Rain Link had already replaced Herrmann with an employee who was not disabled at the time it unlawfully terminated him.

55.     Pursuant to the terms of the Buy-Sell Agreement, Herrmann offered, following his termination, to sell his Rain Link shares to Rain Link for $333,333.  Rain Link counter-offered to take the shares in exchange only for Herrmann's release as a guarantor of certain Rain Link debts.  Herrmann rejected Rain Link's offer.

CAUSES OF ACTION

Count One:  Discrimination on the Basis of a Disability under the ADA

56.     Herrmann incorporates by reference the prior paragraphs of this Complaint.

57.     Herrmann has fully complied with all jurisdictional and procedural prerequisites to bring this claim in this Court.

58.     Herrmann had performed the essential functions of the task coordinator position at Rain Link and its predecessor for nearly fifteen years.

59.     Herrmann was a qualified individual, as defined by the ADA, because, with reasonable accommodations, he could perform the essential functions of the task coordinator position at Rain Link, as demonstrated by his nearly fifteen-year work history.

60.     On March 25, 2009, and again on April 17, 2009, Herrmann notified his employer that his doctor had released him to return to work, for up to four to six hours per day.

61.     A modified work schedule, such as allowing Herrmann to work four to six hours per day during a temporary period before returning to full-time employment, is a reasonable accommodation.

62.     Rain Link's West Office did not have a wheelchair ramp that would enable Herrmann to pass two or three stairs and reach the West Office's entrance, and Rain Link refused to install a simple wheelchair ramp to enable him to access the facility.

63.     Making existing facilities used by employees readily accessible to and usable by individuals with a disability, such as by installing a wheelchair ramp over two or three stairs at the West Office, is a reasonable accommodation.

64.     Rain Link ignored Herrmann's requests to return to work and, because of his disability, did not return him to work on or after March 25, 2009.

65.     On May 6, 2009, Rain Link's counsel informed Herrmann's counsel that Rain Link would not accommodate Herrmann's disability by building a simple wheelchair ramp and that Rain Link was terminating Herrmann's employment, effective immediately.

66.     The accommodations Herrmann requested were simple and inexpensive.

67.     Rain Link refused to provide Herrmann the accommodations he requested.

68.     Rain Link never discussed or proposed any alternative accommodations for Herrmann's disability, as it failed entirely to engage in an interactive process.

69.     Because Rain Link's unlawful discriminatory conduct occurred after January 1, 2009, the ADA, as amended by the ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008), governs Herrmann's claims under the ADA.

70.     Rain Link's failure to return Herrmann to work on or after March 25, 2009, its failure to engage in the interactive process or to provide Herrmann a reasonable accommodation, and its termination of Herrmann's employment constitute discrimination on the basis of a disability in violation of the ADA, 42 U.S.C. § 12101, *et seq.*

71.     Rain Link willfully violated Herrmann's federally protected rights under the ADA.  Rain Link knew or recklessly disregarded that failing to return Herrmann to work on the basis of his disability, failing to engage in the interactive process or to provide Herrmann a

reasonable accommodation, and terminating him on the basis of his disability were prohibited by the ADA.

72.     Because of Rain Link's unlawful actions, Herrmann has been damaged and has sustained past, present, and future losses.  His damages and losses include but are not limited to lost wages and benefits, future lost wages and benefits, punitive damages, interest, costs, expenses, and attorneys' fees.

<b>Count Two:  Retaliation under the ADA</b>

73.     Herrmann incorporates by reference the prior paragraphs of this Complaint.

74.     Herrmann has fully complied with all jurisdictional and procedural prerequisites to bring this claim in this Court.

75.     Herrmann opposed Rain Link's unlawful failure to accommodate his disability and return him to work, despite receiving a medical release to return in March and in April 2009.

76.     Directly, and through counsel, Herrmann opposed practices and acts forbidden by the ADA, insisting that Rain Link cease discriminating against him by accommodating his disability and by returning him to work.

77.     On May 6, 2009, Rain Link terminated Herrmann's employment in violation of the ADA, 42 U.S.C. § 12101, *et seq.,* because Herrmann opposed Rain Link's ADA violations.

78.     Rain Link willfully violated Herrmann's federally protected rights under the ADA.  Rain Link knew or recklessly disregarded that terminating Herrmann in retaliation for his protected activity was prohibited by the ADA.

79.     Because of Rain Link's unlawful actions, Herrmann has been damaged and has sustained past, present, and future losses.  His damages and losses include but are not limited to lost wages and benefits, future lost wages and benefits, punitive damages, interest, costs, expenses, and attorneys' fees.

**Count Three:  Discrimination under the ADA for
Denying Herrmann the Full & Equal Enjoyment of Public Accommodations**

80.     Herrmann incorporates by reference the prior paragraphs of this Complaint.

81.     Rain Link's West Office is the professional office of a service establishment that Rain Link owns and operates.

82.     The two or three stairs leading up to the West-Office entrance are an architectural barrier to Herrmann's full and equal enjoyment of the facilities, privileges, advantages, or accommodations of the West Office because they prevent him from accessing the facility because of his disability.

83.     Rain Link failed to remove the architectural barrier at its West Office.

84.     Rain Link easily could have removed the architectural barrier without much difficulty or expense by installing a simple wheelchair ramp.

85.     Rain Link's failure to remove the architectural barrier denies Herrmann the full and equal enjoyment of the facilities, privileges, advantages, or accommodations of a place of public accommodation in violation of the ADA, 42 U.S.C. § 12101, *et seq.*

86.     Because of Rain Link's unlawful actions, Herrmann has been injured, and he requests appropriate equitable relief, up to and including reinstatement in his former position. His damages and losses also include but are not limited to costs, expenses, and attorneys' fees.

**Count Four:  Unlawful Employment Practices under the KAAD**

87.     Herrmann incorporates by reference the prior paragraphs of this Complaint.

88.     Herrmann has fully complied with all jurisdictional and procedural prerequisites to bring this claim in this Court.

89.     Herrmann was an individual with a disability who was qualified for employment, as defined by the KAAD, in the task coordinator position.

13

90.     Rain Link barred Herrmann from employment because of his disability by refusing to return him to work on or after March 25, 2009, and by terminating his employment on May 6, 2009.

91.     Rain Link refused to make reasonable accommodations for Herrmann's disability, such as by installing a simple wheelchair ramp and by permitting Herrmann to work a modified work schedule, that would have allowed Herrmann to continue working as a Rain Link employee after Rain Link's move to its West Office.

92.     Rain Link denied Herrmann employment opportunities by refusing to return him to work and subsequently terminating him, based on the need to make reasonable accommodations to Herrmann's physical limitations.

93.     On May 6, 2009, Rain Link terminated Herrmann's employment because he opposed Rain Link's KAAD violations.

94.     Rain Link's refusal to return Herrmann to work and its decision to terminate Herrmann because of his disability, its refusal to make reasonable accommodations for Herrmann's disability, its denial of employment opportunities to Herrmann, and its retaliatory discharge of Herrmann constitute unlawful employment practices under the KAAD, K.S.A. § 44-1001, *et seq.*

95.     Because of Rain Link's unlawful actions, Herrmann has experienced pain, suffering, and humiliation, warranting compensatory damages against Rain Link.

96.     Because of Rain Link's unlawful actions, Herrmann has been damaged and has sustained past, present, and future losses.  His damages and losses include but are not limited to lost wages and benefits, future lost wages and benefits, compensatory damages for pain, suffering, and humiliation, interest, costs, expenses, and attorneys' fees.

## Count Five:  Breach of Fiduciary Duty

97.     Herrmann incorporates by reference the prior paragraphs of this Complaint.

98.     Dennis Dixon, as director and President of Rain Link, owed a fiduciary duty to Herrmann as a minority shareholder.

99.     Shonda Chapa, as director and Vice-President of Rain Link, owed a fiduciary duty to Herrmann as a minority shareholder.

100.    Dixon and Chapa, acting together as majority shareholders and directors, owed a fiduciary duty to Herrmann as a minority shareholder.

101.    Dixon and Chapa took numerous self-interested actions to squeeze Herrmann out as a Rain Link stockholder, including:

   a.    firing Herrmann;

   b.    paying themselves excess compensation in the form of salaries and bonuses that benefitted themselves to the exclusion of Herrmann;

   c.    failing to declare a dividend, while paying themselves a constructive dividend in the form of a bonus;

   d.    failing to hold and/or to notify Herrmann of meetings of shareholders or directors;

   e.    upon information and belief, failing to notify Herrmann of a meeting of directors in which Herrmann was removed as an officer and/or director of Rain Link; and

   f.    offering to purchase Herrmann's shares for an unfair price.

102.    Dixon's and Chapa's actions violated the fiduciary duties they owed to Herrmann as a minority stockholder.

15

103.    Dixon's and Chapa's breaches of their fiduciary duties were willful and malicious.

104.    Because of Chapa's and Dixon's unlawful actions, Herrmann has been damaged and has sustained past, present, and future losses.  Chapa's and Dixon's unlawful actions inflicted a distinct and disproportionate injury on Herrmann, as a minority shareholder in a closely held corporation, including his loss of employment and all benefits of stock ownership.

### Count Six:  Oppression of a Minority Shareholder

105.    Herrmann incorporates by reference the prior paragraphs of this Complaint.

106.    Chapa and Dixon, as majority shareholders, took numerous actions that oppressed Herrmann, destroyed his reasonable expectations of return on his investment in Rain Link, and denied him all benefit of his stock ownership, including:

a.      firing Herrmann;

b.      paying themselves excess compensation in the form of salaries and bonuses that benefitted themselves to the exclusion of Herrmann;

c.      failing to declare a dividend, while paying themselves a constructive dividend in the form of a bonus;

d.      failing to hold and/or to notify Herrmann of meetings of shareholders or directors;

e.      upon information and belief, failing to notify Herrmann of a meeting of directors in which Herrmann was removed as an officer and/or director of Rain Link; and

f.      offering to purchase Herrmann's shares for an unfair price.

107.    Dixon's and Chapa's actions were oppressive to Herrmann and his rights as a minority stockholder.

108.    Dixon's and Chapa's oppressive tactics were willful and malicious.

109.    Because of Chapa's and Dixon's unlawful actions, Herrmann has been damaged and has sustained past, present, and future losses.   Chapa's and Dixon's unlawful actions inflicted a distinct and disproportionate injury on Herrmann, as a minority shareholder in a closely held corporation, including his loss of employment and all benefits of stock ownership.

### Count Seven:  Violation of the Kansas Wage Payment Act

110.    Herrmann incorporates by reference the prior paragraphs of this Complaint.

111.    As a Rain Link employee, Herrmann received an annual salary and an annual bonus.

112.    Herrmann was employed by Rain Link throughout 2008, and he remained employed until Rain Link unlawfully terminated him on May 6, 2009.

113.    Herrmann earned the 2008 bonus by his continued employment with Rain Link.

114.    Rain Link's total bonus payout for 2008 was, according to company financial records, $24,000.

115.    Rain Link never paid Herrmann any portion of his 2008 bonus.

116.    Rain Link's refusal to pay Herrmann the 2008 bonus he had earned was willful.

117.    Rain Link's willful refusal to pay Herrmann's earned bonus violates the Kansas Wage Payment Act, K.S.A. § 44-312, *et seq.*

118.    Because of Rain Link's unlawful actions, Herrmann has been damaged and has sustained past, present, and future losses.  His damages and losses include but are not limited to compensatory damages for unpaid wages, a statutory penalty equal to his unpaid wages, interest, costs, expenses, and attorneys' fees.

### PRAYER FOR RELIEF

Plaintiff Herrmann prays for relief and judgment against Rain Link as follows:

A.      Lost wages and benefits;

B.      Unpaid wages;

C.      Statutory penalty for unpaid wages;

D.      Compensatory damages for pain, suffering, and humiliation;

E.      Punitive damages;

F.      Pre-judgment interest, calculated at the maximum rate allowed by law;

G.      Post-judgment interest at the legal rate from the date of judgment until fully paid;

H.      Injunctive relief, including but not limited to:

     1.      removal of architectural barriers;

     2.      reemployment with Rain Link with reasonable accommodations that would enable Herrmann to access his work location and to perform the essential functions of his job;

     3.      repayment to Rain Link of excess compensation paid to defendants;

     4.      declaration of a substantial dividend, including the amounts previously paid to defendants as excess compensation; and

     5.      dissolution of Rain Link or, in the alternative, appraisal of the fair value of Rain Link, as a going concern and in light of excessive compensation paid to Dixon and Chapa, and buyout of Herrmann's shares at a fair value;

I.      All costs and expenses, including attorneys' fees;

J.      Any other relief the Court may deem just and appropriate.

Plaintiff reserves the right to amend this Complaint as new information is discovered during the course of this litigation.

Plaintiff, pursuant to Fed. R. Civ. P. 38(b), hereby requests a jury trial on all claims in the above-captioned matter.  Plaintiff requests Wichita, Kansas, as the place of trial.

Respectfully submitted,

FOULSTON SIEFKIN LLP
1551 N. Waterfront Parkway, Suite 100
Wichita, Kansas  67206-4466
Tel:  316-291-9716
Fax:  866-738-3152

By: /s/ Charles E. McClellan
    Jack Focht             # 05679
    Charles E. McClellan    # 23692
        *Attorneys for Plaintiff*