**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

WAYNE HERRMANN,                                      )
                                                     )
                              Plaintiff,             )
                                                     )
v.                                                   )          Case No. 11-1123-RDR
                                                     )
RAIN LINK, INC., *et al.*,                           )
                                                     )
                              Defendants.            )

## MEMORANDUM AND ORDER

This matter comes before the court upon Plaintiff Wayne B. Herrmann's Motion to

Compel (ECF No. 43) and upon Plaintiff's Motion to Strike or, in the Alternative, for Leave to

Respond to Defendant's Letter (ECF No. 64). For the reasons stated below, plaintiff's motion to

compel is granted in part and denied in part, and plaintiff's motion to strike is granted.

**I.      Procedural Conference Requirement**

The Federal Rules of Civil Procedure and this district's local rules require a moving party

to confer with opposing counsel about the discovery dispute at issue before filing a motion to

compel.[1] In this case, plaintiff's counsel has conferred with defense counsel several times, and

plaintiff has attached to his motion correspondence memorializing the parties' efforts to resolve

or narrow this discovery dispute. The court finds plaintiff has satisfied the procedural conference

requirement.

**II.     Background**

Plaintiff Wayne B. Herrmann and Defendants Dennis Dixon and Shondra Chapa are

shareholders of the defendant corporation, Rain Link, which sells and installs lawn irrigation

---

[1] *See* Fed. R. Civ. P. 37(a)(1); D. Kan. Rule 37.2.

systems. Each person holds one-third of the shares. Mr. Herrmann also worked as a task coordinator at Rain Link and served as an officer/director. After an extended absence related to a medical condition, Mr. Herrmann, a quadriplegic, was not permitted to return to work. He contends Rain Link terminated his employment, and defendants contend Mr. Herrmann abandoned his job.

Mr. Herrmann's complaint alleges defendants unlawfully discriminated against him in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. and the Kansas Act Against Discrimination, K.S.A. § 44-1001, *et seq.* He also claims Mr. Dixon and Ms. Chapa breached fiduciary duties owed to him as a minority shareholder and oppressed his rights as a minority shareholder. He also alleges Rain Link failed to pay him his earned bonus in violation of the Kansas Wage Payment Act, K.S.A. 44-312, *et seq*.

## III.    Plaintiff's Motion to Compel

Fed. R. Civ. P. 26(b)(1) provides that "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." When a party fails to make disclosure or discovery, the opposing party may file a motion to compel. When a party files a motion to compel and asks the court to overrule certain objections, the objecting party must specifically show in its response to the motion how each discovery request is objectionable.[2] Objections initially raised but not supported in response to the motion to compel are deemed abandoned.[3] Similarly, the court will deem waived any objections not asserted in the initial

---

[2] *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 670-71 (D. Kan. 2004).

[3] *Cardenas v. Dorel Juvenile Grp., Inc.*, 230 F.R.D. 611, 615 (D. Kan. 2005); *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 662 (D. Kan. 1999).

response to a discovery request but raised in response to a motion to compel.[4]  If, however, the discovery requests are facially objectionable in that they are overly broad or seek information that does not appear relevant, the burden is on the movant to demonstrate how the requests are not objectionable.[5] With this standard in mind, the court turns to the discovery requests at issue and the objections to the requests.

> ### A.     The personnel files are not fully discoverable because it appears they contain some documents not facially relevant to this case.

Plaintiff's Request for Production No. 25 seeks the "complete employment and personnel records" for eleven current and former Rain Link employees, including Mr. Dixon and Ms. Chapa.[6] Defendants have produced the personnel files of Mr. Dixon, Ms. Chapa, and employees Connie Walls, Mary McGee, and Mark Marnell. Therefore, the motion to compel is moot as to production of these personnel files. Defendants, however, object to the production of the personnel files of the other employees on the ground of relevance.

Relevant information need not be admissible at trial so long as it is reasonably calculated to lead to the discovery of admissible evidence.[7] The court broadly construes relevance at the discovery stage of litigation, and "a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any

---

[4] *Cardenas*, 230 F.R.D. 621.

[5] *See Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc.*, 211 F.R.D. 658, 663 (D. Kan. 2003) (citing *Steil v. Humana Kan. City, Inc.*, 197 F.R.D. 442, 445 (D. Kan. 2000)).

[6] Pl. Wayne B. Herrmann's First Set of Reqs. for Prod. to Defs. at 8-9, ECF No. 44-2.

[7] Fed. R. Civ. P. 26(b)(1).

party."[8] "There is no presumption in the Federal Rules of Civil Procedure that a discovery request is relevant."[9] Relevance, however, is often apparent on the face of the request.[10] When it is not, the proponent of the discovery has the burden to show the relevance of the discovery sought.[11] If a discovery request seeks facially relevant information or if the proponent has demonstrated relevance, the party resisting discovery must establish the lack of relevance by demonstrating that the requested discovery either: (1) is outside the scope of relevance as defined by Rule 26(b), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad discovery.[12]

Some judges in this district have found that, in employment discrimination actions, employment records, including personnel files, are relevant and discoverable if the individual "(1) is alleged to have engaged in the retaliation or discrimination at issue or (2) is alleged to have played an important role in the decision or incident that gives rise to the lawsuit, including witnessing the events giving rise to the lawsuit."[13] These individuals are considered "key witnesses."[14] But disclosure of "employment records is not justified simply because the

---

[8] *Sheldon v. Vermonty*, 204 F.R.D. 679, 689 (D. Kan. 2001) (quoting *Scott v. Leavenworth Unified Sch. Dist. No. 453*, 190 F.R.D. 583, 585 (D. Kan. 1999)).

[9] *Presbyterian Manors, Inc. v. Simplexgrinnell, L.P.*, No. 09-2656-KHV, 2010 WL 3880027, at *7 (D. Kan. Sept. 28, 2010) (citing *Thompson v. Jiffy Lube Int'l, Inc.*, 05-1203-WEB, 2007 WL 608343, at *8 n.20 (D. Kan. Feb. 22, 2007)).

[10] *Id.* (citing *Thompson*, 2007 WL 608343, at *8 n.20).

[11] *Id.* (citing *Thompson*, 2007 WL 608343, at *8 n.20; *Pulsecard, Inc. v. Discover Card Servs.*, 168 F.R.D. 295, 309 (D. Kan. 1996)).

[12] *See id.* at *8 (citing *Gen. Elec. Capital Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2004)).

[13] *P.S. ex rel. Nelson v. The Farm, Inc.*, No. 07-2210-JWL-DJW, 2008 WL 2944911, at *4 (D. Kan. July 28, 2008) (citing cases).

[14] *Id.*

4

individual may be called as a witness at trial."[15] More recently, however, some judges in both employment discrimination actions and other actions have declined to compel production of entire personnel files because these files likely contain information collateral to issues in the case—for example, employees' tax and benefits information.[16]

Here, the relevance of the remaining personnel files in dispute is not readily apparent to the court. Therefore, plaintiff bears the initial burden of establishing that the discovery he seeks is relevant. He argues the personnel files are relevant because some of these employees are witnesses to the events giving rise to the suit. But plaintiff does not explain what events they may have witnessed other than to say defendants have identified these employees as individuals likely to have discoverable information. This explanation does not establish these employees are "key witnesses" who observed the events giving rise to the lawsuit, as opposed to witnesses who may be called at trial.

Plaintiff also argues the personnel files will establish whether Rain Link enforced its employee manual with respect to other employees and whether its application of its "no-show-no-call" policy to plaintiff was consistent with Rain Link's past application of that policy. And plaintiff contends payroll information in the personnel files will show whether Rain Link paid its owner-employees a constructive dividend by paying them more than the reasonable value of

---

[15] *Id.* (citing *Moss v. Blue Cross and Blue Shield of Kan., Inc.*, 241 F.R.D. 683, 689 (D. Kan. 2007).

[16] *See Walker v. Bd. of Cnty. Comm'rs*, No. 09-1316, 2011 WL 2118636, at *2 (D. Kan. May 27, 2011) (finding that requests for complete personnel files were overly broad); *Heartland Surgical Specialty Hosp., LLC v. Midwest Division, Inc.*, No. 05-2164-MLB-DWB, 2007 WL 1246216, at *6 (D. Kan. Apr. 27, 2007) (concluding that certain information in personnel files was relevant—such as job evaluations or performance critiques, reasons for promotion or demotion, and changes in salary—but that other information concerning benefits and where payroll checks were deposited was not relevant); *see also Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 648-49 (10th Cir. 2008) (finding that the district court had not abused its discretion in ruling that a discovery request for a personnel file was overly broad).

their services.  While some of this information is facially relevant for these purposes, it appears the other documents likely contained in the personnel files—such as tax and benefits information—  would have no bearing on these issues.[17] Therefore, the discovery request remains facially objectionable in part.

Defendants fail to squarely address plaintiff's arguments regarding relevance. Instead, defendants argue these employees are not similarly situated to plaintiff because they performed different tasks or because they were not disabled. This argument overlooks the fact that Rain Link's enforcement, or lack of enforcement, of the no-show-no-call policy could potentially bear upon whether the alleged reason for termination was pretextual. And the argument is insufficient to rebut plaintiff's statements regarding a constructive dividend. Therefore, the court sustains in part and overrules in part defendants' relevance objection. The motion to compel is granted as to information in the personnel files involving unauthorized employee absences or enforcement (or lack of enforcement) of Rain Link's no-show-no-call policy. And the motion is granted as to the salary information of other Rain Link employees. Defendants shall supplement their response to this request accordingly.

**B.      Defendants have established that some—but not all—of the documents listed on their privilege log are attorney-client privileged or work-product protected, and plaintiff has not shown fiduciary exception applies to privileged or work-product-protected documents.**

Plaintiff seeks various categories of documents defendants contend are shielded from discovery by the attorney-client privilege, the work-product doctrine, or both. The bulk of the parties' arguments on this topic address the fiduciary exception to the attorney-client privilege.

---

[17] *See Walker*, 2011 WL 2118636, at *2; *Heartland*, 2007 WL 1246216, at *6.

6

Specifically, plaintiff argues that otherwise privileged documents and information may be discoverable when the communications at issue involve legal advice to fiduciaries in the execution of their fiduciary duties. Before considering the fiduciary exception, the court must determine whether any of the material is privileged or work-product protected.

"In federal court, the determination of what is privileged depends upon the dictates of Rule 501 of the Federal Rules of Evidence."[18] Fed. R. Evid. 501 provides that federal common law generally governs claims of privileges. "But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."[19]

Here, Mr. Herrmann asserts both federal and state law claims. The Tenth Circuit has directed that in this situation, a court is to consider both bodies of law.[20] Ultimately, it makes little difference because Kansas law and federal law generally do not conflict concerning the elements and interpretation of the attorney-client privilege.[21] The elements under both federal and Kansas law are:

> (1) Where legal advice is sought (2) from a professional legal advisor in his capacity as such, (3) communications made in the course of that relationship (4) made in confidence (5) by the client (6) are permanently protected (7) from disclosures by the client, the legal advisor, or any other witness (8) unless the privilege is

---

[18] *ERA Franchise Sys., Inc. v. N. Ins. Co. of N.Y.*, 183 F.R.D. 276, 278 (D. Kan. 1998) (quoting *Fisher v. City of Cincinnati*, 753 F. Supp. 692, 694 (S. D. Ohio 1990)).

[19] Fed. R. Evid. 501.

[20] *See Sprague v. Thorn Ams., Inc.*, 129 F.3d 1355, 1369 (D. Kan. 1997); *see also Heartland Surgical Specialty Hosp. v. Midwest Division, Inc.*, No. No. 05-2164-MLB-DWB, 2007 WL 2192885, at *4 (D. Kan. July 25, 2007).

[21] *Heartland*, 2007 WL 2192885, at *4 (citing *Marten v. Yellow Freight Sys., Inc.*, No. 96-2013-GTV, 1998 WL 13244, at *3 (D. Kan. Jan. 6, 1998)).

waived.[22]

In diversity cases, the work-product doctrine is governed by the uniform federal standard outlined in Fed. R. Civ. P. 26.[23]  When a party objects to discovery on the basis of the work-product doctrine, the party must show: (1) the materials sought are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by a party or a representative of that party.[24]  When a party withholds documents or other information based upon a privilege or work-product immunity, the party must "(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."[25]

The party asserting objections based upon work-product immunity or the attorney-client privilege, bears the burden of establishing that either or both apply.[26] To carry that burden, the objecting party must describe in detail the documents or information to be protected and must provide precise reasons for the objection to discovery.[27] Making this showing typically requires

---

[22] *Cypress Media, Inc. v. City of Overland Park*, 997 P.2d 681, 689 (Kan. 2000); *see also New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 425 (D. Kan. 2009) (listing identical elements for attorney-client privilege under federal common law).

[23] *Frontier Ref., Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 702 n.10 (10th Cir. 1998).

[24] *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 247 F.R.D. 656, 657 (D. Kan. 2007); Fed. R. Civ. P. 26(b)(3).

[25] Fed. R. Civ. P. 26(b)(5).

[26] *See Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984); *McCoo v. Denny's Inc.*, 192 F.R.D. 675, 680 (D. Kan. 2000); *Johnson v. Gmeinder*, 191 F.R.D. 683, 642 (D. Kan. 2000).

[27] *McCoo*, 192 F.R.D. at 680 (quoting *Nat'l Union Fire Ins. Co. v. Midland Bancor, Inc.*, 159 F.R.D. 562, 567 (D. Kan. 1994)).

submission of a privilege log.[28] The objecting party must provide sufficient information to enable the court to determine whether each element of the asserted objection is satisfied.[29] This burden can be met only by an evidentiary showing based on competent evidence and cannot be discharged by conclusory assertions or blanket claims of privilege.[30] Moreover, the objecting party has the burden to establish the existence of the privilege or immunity prior to the time the court is asked to determine its sufficiency and applicability.[31] A party's failure to make the required showing when the court is asked to rule upon the existence of the privilege is not excused because the document is later shown to be one that would have been privileged if a timely showing had been made.[32]

Defendants' brief generally describes the categories of documents withheld. Defendants state they possess handwritten "notes of client communications to counsel concerning plaintiff and his absences" that were created before defendants' attorney sent a letter notifying plaintiff that Rain Link was placing him on unpaid leave.[33] They have additional handwritten notes of "communications to counsel from January through April 2009 concerning the ongoing absences

---

[28] *See Sprint Commc'ns Co. v. Vonage Holdings Corp.*, No. 05-2433-JWL-DJW, 2007 WL 1347754, at *2 (D. Kan. May 8, 2007). A privilege log is not always necessary as long as the opposing party and the court can assess whether the claimed privilege applies to the document. *Farha v. Idbeis*, No. 09-1059-JTM, 2010 WL 3168146, at *4 n.11 (D. Kan. Aug. 10, 2010). For example, a describing a particular communication in detail might suffice. *Id.*

[29] *McCoo*, 192 F.R.D. at 680 (citing *Jones v. Boeing Co.*, 163 F.R.D. 15, 17 (D. Kan. 1995)).

[30] *See id.*; *see also Am. Cas. Co. of Reading, Pa. v. Healthcare Indem., Inc.*, No. 00-2301-DJW, 2001 WL 1718275, at *2 (D. Kan. May 21, 2001); *Nat'l Union Fire Ins. Co.*, 159 F.R.D. at 567 (citations omitted).

[31] *Rural Water Sys. Ins. Benefit Trust v. Group Ins. Adm'rs, Inc.*, 160 F.R.D. 605, 608 (D. Kan. 1995).

[32] *Peat*, 748 F.2d at 542.

[33] Defs.' Resp. to Pl.'s Mot. to Compel at 19, ECF No. 49.

of plaintiff."[34] Defendants describe other communications between defendants and counsel that took place after plaintiff's attorney had sent defendants a demand letter. And they state they possesses handwritten notes by defense counsel made during a client conference with Mr. Dixon and Ms. Chapa on May 6, 2009.[35] Defendants' privilege log provides additional details about the documents withheld and sufficiently establishes that the majority of these documents are attorney-client privileged or work-product protected.

Plaintiff initially argued that a handful of entries appearing on the privilege log were not privileged. Since the time of plaintiff's initial motion, the court *sua sponte* ordered defendants to file a supplemental privilege log providing additional information typically required in this district. In his reply brief, plaintiff does not address whether he believes all of these entries are still deficient. Rather, plaintiff generally argues that certain categories of information are not privileged or work-product protected.

Plaintiff takes issue with defendants' failure to produce certain e-mail attachments. The attachments at issue appear on copies of e-mails Bates-stamped RL4576 and RL4594, respectively. RL4576 is an e-mail from defense counsel to Ms. Chapa with the subject line, "Andrew Thengvall Proposed Letter - Wayne Herrmann."[36] The e-mail contained the attachment Thengvall_Proposed_Ltr_2-8-10.pdf. The second e-mail, numbered RL4594, was sent from defense counsel to Ms. Chapa, with the subject line, "Minutes."[37] The e-mail contained the

---

[34] *Id.*

[35] *Id.* at 20.

[36] *See* E-mail from Jerry Bogle to Sandra Chapa at 9, ECF No. 59-3, Feb. 8, 2010.

[37]  *See* E-mail from Jerry Bogle to Sandra Chapa at 16, ECF No. 59-3, Mar. 11, 2010.

attachment Minutes.pdf. Responding to plaintiff's counsel's inquiry, defense counsel stated defendants had withheld these attachments.[38] Defense counsel directed plaintiff's counsel to the privilege log. But as plaintiff's counsel notes, the privilege log lacks entries describing these attachments—or at least accurately describing them. Accordingly, defendants have not carried their burden to show these attachments are privileged or otherwise protected. The court overrules defendants' attorney-client privilege and work-product objections as to these documents. Defendants are ordered to produce the attachments appearing on documents RL4576 and RL4594.

There is also some indication that defendants have withheld communications between Ms. Chapa or other Rain Link shareholders and third parties, copies of which happen to be in defense counsel's file. If that is the case, defendants must produce them. A document that is itself not privileged does not become privileged when it is provided to an attorney.[39] This is true of several entries appearing on defendants' privilege log—namely RL4468, RL4473, RL4492, RL4493, all of which appear to be correspondence between individuals other than defendants and defense counsel that were subsequently provided to counsel or to defendants.

Other entries on the privilege log are ambiguous or entirely unclear, which leads the court to conclude defendants have not met their burden to show these documents are privileged or work-product protected. Documents numbered RL4462-4466 are described as financial statements and a stock ledger. But the privilege log additionally states that these documents are Ms. Chapa's handwritten notes. Of course, it does not follow that financial statements and stock

---

[38] *See* E-mail from Paul McCausland to Charles McClellan at 17, ECF No. 58-3, Dec. 13, 2011.

[39] *See Williams v. Sprint/United Mgmt. Co.*, 245 F.R.D. 660, 670 (D. Kan. 2007) ([B]usiness documents sent to attorneys are not automatically privileged.").

ledgers would be handwritten or would be created for the purpose of obtaining legal advice, as the privilege log states. Moreover, business documents sent to attorneys are not automatically protected.[40]

Similarly, the entry for RL4491describes the document as "Enclosing letter to William Minner of KHRC."[41] Ms. Chapa was the recipient.  The entry also states the purpose of the letter was, "For client's information and explaining preparation of position paper to KHRC."  Without a more detailed explanation, a letter drafted by counsel to the executive director of the Kansas Human Rights Commission would not qualify as privileged or work-product-protected material just because a copy was forwarded to a client.[42] But a letter from counsel to his client that explained counsel's strategy regarding the KHRC complaint could be privileged or protected. The problem is that the court simply does not know the nature of the document. Defendants have not met their burden to show these documents are privileged or otherwise protected from disclosure. In sum, defendants must produce the attachments appearing on documents RL4576 and RL4594, documents RL4462-4466, RL4468, RL4473, RL4491, RL4492, RL4493. To the extent these documents exist, defendants must also produce documents containing communications between Ms. Chapa or other Rain Link shareholders or employees and third parties, copies of which happen to be in defense counsel's file.

Even though the majority of documents listed on defendants' privilege log are attorney-client privileged or are attorney work product, plaintiff contends they are discoverable because

---

[40] *In re Grand Jury Subpoena to Kan. City Bd. Of Pub. Utilities*, 246 F.R.D. 673, 679 (D. Kan. 2007).

[41] Defs.' Am. Privilege Log at 4, ECF No. 57-1.

[42] *See McCoo*, 192 F.R.D. at 680-81 (holding that documents provided to the KHRC by legal counsel were not privileged).

of the fiduciary exception.  In the seminal 1970 opinion *Garner v. Wolfinbarger*,[43] the Fifth Circuit concluded attorney-client communications may not be privileged if the communications involve legal advice rendered to fiduciaries in the execution of their fiduciary duties. "The fiduciary exception is now well recognized in the jurisprudence of both federal and state courts, and has been applied in a wide variety of contexts, including in litigation involving common-law trusts, disputes between corporations and shareholders, and ERISA enforcement actions."[44] Nevertheless, courts have generally found the fiduciary exception inapplicable to communications made during a time when the parties' interests were not aligned or when the subject of the communications did not involve matters that a fiduciary would owe a duty to disclose to a beneficiary. Here, it appears a large number of documents listed on defendants' privilege log fit into these categories. Moreover, neither the Tenth Circuit nor Kansas Supreme Court has addressed the fiduciary exception and the manner in which courts should apply it. The court finds plaintiff has not demonstrated the fiduciary exception should apply to the documents at issue in this case.

In reaching this conclusion, the court has considered the rationale behind the fiduciary exception.[45] In *Garner*, the Fifth Circuit considered whether shareholders, bringing a class action suit against the corporation and derivatively against its officers, could depose the person who

---

[43] *Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970).

[44] *United States v. Jicarilla Apache Nation*, --- U.S. ---, 131 S. Ct. 2313, 2332-33 (2011) (Sotomayor, J. dissenting).

[45] *See generally Jicarilla*, 131 S. Ct. at 2313 (also considering the reasons for applying the fiduciary exception in holding the fiduciary exception did not extend to the trust relationship between the United States and Indian tribes).

13

had served as counsel to the corporation.[46] Among other things, the stockholders sought to discover whether the attorney advised the corporation regarding the legality of some of its actions. The Fifth Circuit held that the shareholders may be entitled to discover this information if they showed good cause why the attorney-client privilege should not be invoked. The Fifth Circuit did not create a bright-line rule regarding disclosure. Rather, *Garner* sets forth a number of nonexhaustive factors a court may consider when determining whether the shareholder has shown good cause.

Courts have applied *Garner*'s fiduciary exception in a variety of cases in which the party from whom discovery is sought owed a fiduciary duty to the party seeking discovery—including actions brought by minority shareholders.[47] These opinions have articulated two reasons for applying the exception.[48] The first is that the fiduciary is not the sole client of the attorney but is merely a proxy for the beneficiary.[49] In other words, the so-called "fiduciary exception" is not really an exception at all but is a logical extension of the client's control of the attorney-client privilege.[50]  In *Garner*, the Fifth Circuit certainly considered this rationale. It found the common-interest doctrine instructive. That is, when an attorney represents "parties having a common

---

[46] *Garner*, 430 F.2d at 1103.

[47] *See, e.g., Fausek v. White*, 965 F.2d 126, 133-34 (6th Cir. 1992) (finding that "when shareholders present a colorable claim of fraud or criminal activity that is inimical to their interests as shareholders, they must be given an opportunity to establish good cause why the attorney-client privilege should not be invoked in their particular case").

[48] *See United States v. Jicarilla Apache Nation*, 131 S. Ct. at 2317 (2011) ("In cases applying the fiduciary exception, courts identify the 'real client' based on whether advice was brought by the trust corpus, whether the trustee had a reason to seek advice in a personal rather than a fiduciary capacity, and whether the advice could have been intended for any purpose other than to benefit the trust.").

[49] *Murphy v. Gorman*, 271 F.R.D. 296, 306 (D.N.M. 2010) (citing *United States v. Mett*, 178 F.3d 1058, 1063 (9th Cir. 1999)); *Jicarilla Apache Nation v. United States*, 88 Fed. Cl. 1, 10 (Fed. Cl. Ct. 2009).

[50] *In re United States*, 590 F.3d 1305, 1312 (Fed. Cir. 2009), *vacated*, 131 S. Ct. 2313.

interest, neither party may exercise the attorney-client privilege in a subsequent controversy with the other."[51] The second justification for the fiduciary exception is that a fiduciary has a duty to keep a beneficiary informed of certain matters.[52] In that case, "the fiduciary exception can be understood as an instance of the attorney-client privilege giving way in the face of a competing legal principle."[53]

Conversely, when there is no mutuality of interest between the fiduciary and beneficiary, the reasons for applying the fiduciary exception fade. For example, a number of courts have noted the fiduciary exception does not apply when fiduciaries seek legal advice for their own protection against beneficiaries or when fiduciaries seek legal advice about non-fiduciary matters.[54] When fiduciaries seek legal advice in this capacity, their interests are not aligned with the beneficiaries' interests; so, it would make little sense to consider the beneficiaries the true clients of the attorney and therefore entitled to disclosure.[55] Likewise, fiduciaries do not have a duty to keep beneficiaries informed of *all* matters. It naturally follows that the fiduciary

---

[51] *Garner*, 430 F.2d. at 1103.

[52] *Mett*, 178 F.3d at 1063.

[53] *Id.*

[54] *See, e.g. id.*, 187 F.3d at 1065 (stating that when a fiduciary seeks legal advice for his own protection, the "legal fiction" of the fiduciary as a representative of the beneficiaries no longer applies); *In re Long Island Lighting Co.*, 129 F.3d 268, 272-73 (2d Cir. 1997) (finding that the fiduciary exception does not apply to communications with counsel regarding non-fiduciary matters); *Jicarilla*, 88 Fed. Cl. at 13 ("[W]hen a fiduciary retains counsel and seeks legal advice for its own protection against the beneficiaries, any notion that it is seeking legal advice on behalf of the beneficiaries evaporates, leaving the beneficiaries with no reasonable expectation that they will be kept informed of such matters."); *Sigma Delta, LLC v. George*, No. 07-5427, 2007 WL 4590097, at *3-4 (E.D. La. 2007) (finding that the fiduciary exception does not apply to communications between a fiduciary and counsel after litigation begins); *Strougo v. BEA Assocs.*, 199 F.R.D. 515, 524 (S.D.N.Y. 2001) ("[W]hile the *Garner* exception permits disclosure of communications relating to the conduct of an alleged action in proper circumstances, it does not permit disclosure of communications regarding the defense of a lawsuit."); *Hutchinson v. Farm Family Cas. Ins. Co.*, 867 A.2d 1, 10 (Conn. 2005) (finding the fiduciary exception did not apply because the parties' interests were adverse).

[55] *Jicarilla*, 88 Fed. Cl. at 13.

exception applies only to communications involving fiduciary matters.[56]

Here, it appears a number of documents were created after the parties' interests became adverse. Of course, the parties do not focus on when exactly their interests became adverse or how that point in time relates to the date of creation of the documents. What the court does know is this: A significant portion of the documents appearing on the privilege log were created after plaintiff's counsel sent a demand letter to defendants. Other documents concern the KHRC's investigation regarding plaintiff's administrative charge of discrimination—a point when the parties' interests were certainly adverse. As explained above, the *Garner* exception generally does not apply when fiduciaries seek legal advice to insulate themselves from beneficiaries.

Moreover, the court cannot say whether the documents involve communications about "fiduciary matters" that Ms. Chapa and Mr. Dixon would owe a duty to disclose to Mr. Herrmann. Plaintiff cites case law for general propositions concerning the duties controlling shareholders, directors, and officers owe to minority shareholders. These cases do not establish that the specific communications at issue here concerned fiduciary matters. Quite simply, the lack of discussion about the individual documents has left the court unable to evaluate whether the documents were created before or after the parties' interests became adverse or whether the documents contain communications concerning fiduciary matters.

Perhaps most importantly, neither the Tenth Circuit nor any Kansas appellate court has adopted, or even addressed, the fiduciary exception or the scope of its application. In *Sprague v. Thorn Americas*, the Tenth Circuit found that when both federal law claims and pendent state

---

[56] *Mett*, 178 F.3d 1065.

law claims were implicated, the court should consider both bodies of law.[57] In that case, however, the litigants did not focus on any distinction between federal and state law. The opinion also reiterates that when a case involves both federal claims and pendent state law claims, "as to the state causes of action, a federal court should look to state law in deciding privilege questions."[58] Obviously, the court and litigants are not always able to parse out what discovery or evidence supports a federal claim as opposed to a state claim. Here, however, plaintiff expressly states that his arguments concerning the applicability of the fiduciary exception "are based entirely on his state-law shareholder claims."[59] But plaintiff fails to set forth an argument addressing whether the Kansas Supreme Court would adopt the fiduciary exception.

In Kansas, the attorney-client privilege is codified in K.S.A. 60-426. In at least three states where the attorney-client privilege is codified or found in a evidentiary rule, courts have declined to apply the fiduciary exception, reasoning that it is not the province of the court to create exceptions to privileges created by a legislative body.[60] That is not to say the Kansas Supreme Court would reach this conclusion. These cases merely illustrate the applicability of the fiduciary exception to plaintiff's state-law shareholder claims is questionable.

---

[57] *Sprague*, 129 F.3d at 1369.

[58] *Id.* at 1368 (citing *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1551 (10th Cir. 1995)).

[59] Reply in Supp. of Pl.'s Mot. to Compel at 14, ECF No. 58.

[60] *See Murphy*, 271 F.R.D. at 318-19 (finding that the New Mexico Supreme Court would not permit a judicially created expansion to the attorney-client privilege); *Wells Fargo v. Sup. Ct.*, 22 Cal. 4th 201, 206 (2000) ("The privileges set out in the Evidence Code are legislative creations; the courts of this state have no power to expend them or to recognize exceptions."); *Huie v. DeShazo*, 922 S.W.2d 920, 924-25 (Tex. 1996) (stating that the Rule of Evidence governing the state's attorney-client privilege did not contain a fiduciary exception and that if the special rule of fiduciaries justifies an exception, it should be implemented through an amendment to the rule).

Defendants have also asserted work-product immunity as to some documents. Because federal law governs work-product issues, the court must also consider whether the fiduciary exception applies to work-product protected documents.[61] Plaintiff cites *Aguinaga v. John Morrell & Company*, a 1986 opinion from this district concluding the fiduciary exception applies to the work-product doctrine.[62] Four years prior to *Aguinaga*, the Fifth Circuit, which authored *Garner*, held the fiduciary exception did not apply to the work-product doctrine.[63] And since *Aguinaga*, other circuits have reached the same conclusion.[64]  As the Fifth Circuit explained,

> *Garner* is premised upon the "mutuality of interest" between shareholder and management. This "mutuality of interest" may exist for the attorney-client privilege. But once there is sufficient anticipation of litigation to trigger the work product immunity, we think this mutuality is destroyed. . . .The work product privilege is based on the existence of an adversarial relationship, not the quasi-fiduciary relationship analogized to in *Garner*. The joint attorney analogy discussed by the *Garner* court also does not apply to work product. Two parties anticipating litigation against each other do not have a common interest. It is not reasonable to indulge in the fiction that counsel, hired by management, is also constructively hired by the same party counsel is expected to defend against.[65]

---

[61] *Frontier*, 136 F.3d at 702 n.10.

[62] *Aguinaga v. John Morrell & Company*, 112 F.R.D. 671, 682 (D. Kan. 1986).

[63] *In re Int'l Sys. and Controls Securities Litig.*, 693 F.2d 1235, 1239 (5th Cir. 1982).

[64] *See, e.g., In re Teleglobe Comm'cns Corp.*, 493 F.3d 345, 385 (3d Cir. 2007); *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1186, 1423 (11th Cir. 1994); *Sandberg v. Virginia Bankshares, Inc.*, 979 F.2d 332, 355 n.22 (4th Cir. 1992) *vacated on unrelated grounds by* Nos. 91-1873(L), CA 88-299-A, 91-1874, CA-88-1020-A, 1993 WL 524680 (4th Cir. Apr. 7, 1993); *In re Int'l Sys. and Controls Securities Litig.*, 693 F.2d 1235, 1239 (5th Cir. 1982). The Fourth Circuit has recently provided some indication it was willing to consider applying the fiduciary exception to the work-product doctrine in the context of ERISA litigation. *See Solis v. Emp'rs Relations Ass'n*, 644 F.3d 221, 232-33 (4th Cir. 2011). *See also Jicarilla*, 88 Fed. Cl. at 13 (stating that the majority of courts considering the issue have concluded the fiduciary exception does not apply to the work-product doctrine) (citing cases).

[65] *In re Int'l Sys. and Controls Securities Litig.*, 693 F.2d 1235, 1239 (5th Cir. 1982).

Although another judge in this district has found the fiduciary exception applies to the work-product doctrine, it should not be treated as binding precedent in this case.[66] The court is reluctant to find the fiduciary exception applies to the work-product doctrine absent authority from the Tenth Circuit and particularly because the weight of authority from other courts does not support its application in this context.[67] The court shares the opinion of the Fifth Circuit: that documents created in anticipation of litigation are created at a time when the fiduciary and beneficiary do not share the same interests. Therefore, the fiduciary exception should not apply to the work-product doctrine.

The court's conclusion concerning the fiduciary exception is further bolstered by the lack of case law from this district applying the fiduciary exception under factually analogous circumstances. The District of Kansas has only considered the fiduciary exception in two types of cases: (1) actions brought under the Employment Retirement Income Security Act (ERISA) in which an employer-administrator of an ERISA plan seeks to invoke the attorney-client privilege against plan beneficiaries[68]—cases in which courts usually more broadly construe the exception[69]— and (2) in the context of a union seeking to invoke the privilege against its members.[70] These types of cases are distinguishable from the present situation. Here, plaintiff

---

[66] *McCormick v. City of Lawrence*, No. 02-2135-JWL, 2008 WL 2795134, at *9 (D. Kan. July 18, 2008) (citing *In re Executive Office of President*, 215 F.3d 20, 24 (D.C. Cir. 2000) (stating that district court decisions do not establish the law of the circuit or even the law of the district)).

[67] *See supra* Note 58; *see also Jicarilla*, 131 S. Ct. at 2320 n.1 (stating that the issue of whether the fiduciary exception applies to the work-product doctrine was not before the Supreme Court)

[68] *See Soc'y of Prof'l Eng'g Employees in Aerospace, IFPTE Local 2001, AFL-CIO v. Boeing Co.*, No. 05-1251-MLB, 07-1043-MLB, 2009 WL 3711599, at *3-4 (D. Kan. Nov. 3, 2009); *Lewis v. UNUM Corp. Severance Plan*, 203 F.R.D. 615, 619 (D. Kan. 2001).

[69] *See, e.g., Solis*, 644 F.3d at 232-33.

[70] *See Aguinaga*, 112 F.R.D. at 680-61.

asserts some claims stemming from his employment relationship with Rain Link and some claims stemming from his status as a shareholder. He also has sued Ms. Chapa and Ms. Dixon both individually and in their capacities as Rain Link officers. Perhaps most importantly, it appears a significant number of documents at issue were likely created at a time when the parties' interests were adverse, or they involve communications that Ms. Chapa and Mr. Dixon may not owe a duty to disclose to plaintiff. For all of these reasons, the court finds that under the factual circumstances of this case, plaintiff has not carried his burden to show the fiduciary exception applies to the privileged or work-product-protected documents.[71]

### C.  Defendants are required to produce documents concerning job vacancies—to the extent these documents exist—because defendants have waived their relevance objection.

Plaintiff's Request No. 24 seeks documents relating to "the recruitment, hiring, promotion, or reassignment of any employee to perform office work for Rain Link from October 1, 2008, to present including without limitation: job listings or other advertisements, employment applications received, interview notes, offers of employment, job descriptions, and for each person hired, compensation history (including bonuses) and personnel files."[72] Plaintiff explains that this discovery is relevant for two purposes: First, plaintiff states these documents are relevant to the issue of the ADA's requirement that employers provide "reasonable accommodation." Plaintiff states that he seeks information regarding other Rain Link vacancies to determine whether Rain Link could have reassigned him to another position as a reasonable

---

[71] *See Johnson*, 191 F.R.D. at 642-43 (explaining that once the elements of the work-product doctrine are met, the burden rests on the party asserting waiver to demonstrate it); *see also Garner*, 430 F.3d at 1104 (stating the stockholders have the burden to show cause why the attorney-client privilege should not be invoked by a corporation).

[72] Pl. Wayne B. Herrmann's First Set of Reqs. for Produc. to Defs. at 8, ECF No. 44-2.

accommodation. Second, plaintiff argues this information is relevant to the issue of pretext. He states defendants now contend he was unqualified to return to his position or to any other Rain Link position because, at that time, he could only work four to six hours. Plaintiff contends he requires discovery on other job openings to evaluate defendants' contention.

Defendants initially stated they had no responsive documents except for compensation records and personnel files, which defendants objected to producing. The court agrees that defendants do not have to produce compensation records and entire personnel files in response to this request. It is not readily apparent how employee compensation records and *entire* personnel files are facially relevant to the issues of reasonable accommodation and pretext. The finds that a request for entire personnel files is facially objectionable in that *some* information contained in the personnel files would not be relevant to this case. Because plaintiff has not demonstrated their relevance, defendants do not have to produce these documents. If other responsive documents—such as employment applications, interview notes, employment offers, and the like—are contained in the personnel files, defendants must produce them.

Defendants challenge the relevance of plaintiff's request as to the issue of reasonable accommodation. Defendants, however, did not initially lodge a relevance objection in response to this request. So, this objection is waived.[73] Even if defendants had timely objected, the court would still overrule the objection. Plaintiff separately explains why this request is also relevant to the issue of pretext, an argument defendants do not rebut. In short, the court finds that with the exception of compensation records and entire personnel files, plaintiff has shown this discovery request seeks facially relevant information. Defendants' untimely relevance objection is

---

[73] *See Cardenas*, 203 F.R.D. at 621.

21

overruled.

Nevertheless, the court is unclear whether defendants even possess additional responsive documents. In response to the motion to compel, defendants state they lack "responsive documents regarding recruitment, selection, qualifications or hiring of plaintiff's replacement."[74] The discovery request plainly seeks more than this. To the extent defendants are in the possession, custody, or control of additional documents responsive to this request (other than those documents the court has determined need not be produced), defendants shall produce them. The motion to compel is granted in part as to this request.

> **D.      Although defendants have waived all objections to Request No. 38, the court denies without prejudice the motion to compel GPS "backup" information because it is unclear whether this information is responsive to the request.**

Plaintiff's Request No. 38 seeks studies, reports, and similar documents "prepared for Rain Link by third parties from June 1, 2007, to present, regarding Rain Link's financial condition, valuation, organization . . . or future development."[75] In their initial response to this discovery request, defendants stated they had previously produced the only responsive documents that exist. They asserted no specific objections.

After plaintiff filed his motion to compel, defendants produced documents prepared by GPS, a Rain Link consultant. Plaintiff, however, states that defendants "excerpted" some information and have failed to produce any of the "backup" information, including information showing how much Rain Link paid for these services. As an initial matter, defendants have waived any objections they may have had to this request by failing to initially object.

---

[74] Def.'s Response to Pl.'s Mot. to Compel at 30, ECF No. 49.

[75] Pl. Wayne B. Herrmann's First Set of Reqs. for Produc. to Defs. at 11, ECF No. 44-2.

Nevertheless, the court cannot determine whether the GPS backup documents are even responsive to this request because neither party provides a sufficient description of these documents. Defendants briefly describe these documents as "the backup documents reviewed by GPS in performing a tax strategy analysis" for Rain Link.[76] The plain language of the request seeks documents prepared for Rain Link by third parties, not documents relied upon by third parties in formulating their reports. Defendants also argue these backup documents contain Ms. Chapa's and Mr. Dixon's personal financial information, which should not be produced. And plaintiff counters by arguing that Ms. Chapa's and Mr. Dixon's financial information is relevant to this litigation. Again, the plain language of the request does not seek information about the personal finances of Ms. Chapa or Mr. Dixon. Because the court cannot determine whether GPS backup documents are responsive to this request, the court will not compel production of these documents at this time. With respect to this request, the court denies plaintiff's motion without prejudice to refiling within fourteen (14) days from the date of this order. Prior to filing a renewed motion to compel, plaintiff shall meaningfully confer with defendants about whether GPS backup documents are responsive to the request for production.

### E.   Defendants have waived their objection to producing documents and providing information concerning personal expenses.

Plaintiff's Request No. 29 seeks documents showing expenses paid by Rain Link to "or on behalf of Rain Link's officers, directors, or stockholders, including expenses paid to or on behalf of the spouses, significant others, or other family members of such officers, directors, or stockholders, from November 2, 2000, to present."[77] Plaintiff has agreed to narrow the temporal

---

[76] Defs.' Rep. to Pl.'s Mot. to Compel at 33, ECF No. 49.

[77] Pl. Wayne B. Herrmann's First Set of Reqs. for Produc. to Defs. at 9, ECF No. 44-2.

scope of this request from January 1, 2007, to the present for all credit card and gas card statements. Interrogatory No. 15 seeks similar information—asking defendants to provide itemized payment and compensation information.[78] In response to the motion to compel, defendants attempt to assert an undue burden and relevance objections. But defendants failed to initially raise these objections in response to the discovery requests. Therefore, defendants have waived their objections.[79] Even considering the objections, the court would overrule them. Defendants have failed to show this information is not relevant, and defendants have failed to properly support their undue burden objection.[80] Accordingly, the motion to compel is granted with respect to this request, as limited in temporal scope by agreement.

> **F.      Defendants shall supplement their response to Interrogatory No. 17 because they failed to include some responsive information in their original answer.**

Plaintiff's Interrogatory No. 17 seeks the identity of other Rain Link employees who took a leave of absence of at least thirty days and/or the identity of Rain Link employees placed on medical leave.[81] When defendants initially responded to this interrogatory, they failed to disclose a leave of absence taken by Mr. Dixon. Defendants state they formulated their answer based on Ms. Chapa's recollection, even though the interrogatory seeks information for a twelve-year period. Defendants may not limit their answer to matters within Ms. Chapa's memory when defendants likely have within their possession, custody, or control records that contain additional

---

[78] Pl. Wayne B. Herrmann's First Set of Interrog. to Defs. at 12, ECF No. 44-3.

[79] *Cardenas*, 230 F.R.D. at 621.

[80]   *See Linnebur v. United Tel. Ass'n*, No. 10-1379-RDR, 2011 WL 5103300, at *5 (D. Kan. Oct. 27, 2011) (discussing the requirements for supporting an undue burden objection).

[81] Pl. Wayne B. Herrmann's First Set of Interrog. to Defs. at 13, ECF No. 44-3.

information that would better inform their answer.[82] Accordingly, the court orders defendants to supplement their answer to this interrogatory after defendants review their records to determine whether they have failed to identify other responsive information. The motion to compel is granted with respect to this request.

      **G.**      **The court will not compel a further response to an interrogatory that requires the opposing parties to assess what they believe is relevant because the dispute amounts to a disagreement about what the parties feel is relevant—which is distinct from a failure to answer or to support an objection.**

Plaintiff's Interrogatory No. 18 seeks the identities of third parties that possess or have within their control any information relevant to this case.[83] Plaintiff contends defendants failed to fully answer this interrogatory because defendants failed to disclose the identities of some third parties that might—in plaintiff's opinion— possess relevant information. Plaintiff lists examples such as banks providing commercial loans to Rain Link, business consultants, and phone companies. Defendants contend they answered the interrogatory in good faith and argue that the parties simply disagree about what constitutes "relevant information." The court has previously found that discovery requests requiring the opposing party to assess relevance tend to be facially overbroad.[84] Quite simply, this is not a dispute for the court to resolve. Plaintiff has drafted a discovery request that left it to defendants to assess relevance, and defendants have done so. Plaintiff's motion to compel is denied with respect to this request.

---

[82] *See Dean v. New Werner Holding Co.*, No. 07-2534-GLR, 2008 WL 2560707, at *3 (D. Kan. June 26, 2008) (discussing a party's obligations in answering an interrogatory); *Heartland Surgical Speciality Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164-MLB-DWB, 2007 WL 756631, at *4 (D. Kan. Mar. 8, 2007) (same).

[83] Pl. Wayne B. Herrmann's First Set of Interrog. to Defs. at 13, ECF No. 44-3.

[84] *See Stouder v. M&A Tech.*, No. 09-4113-JAR, 2011 WL 673763, at *3 (denying a motion to compel as to a request for production seeking copies of statements by individuals "relevant to any matter in this case").

**H.**     **Summary**

Defendants must supplement their responses to Request Nos. 24 (as limited), 25 (as limited), and 29. Defendants must supplement their responses Interrogatory Nos. 15 and 17, as ordered, and they must supplement their responses to Interrogatory Nos. 10 and 14, as they have agreed to do.[85] Defendants must produce the attachments appearing on documents RL4576 and RL4594, and they must produce documents RL4462-4466, RL4468, RL4473, RL4491, RL4492, RL4493. To the extent these documents exist, defendants must also produce documents containing communications between Ms. Chapa or other Rain Link shareholders or employees and third parties, copies of which happen to be in defense counsel's file. If they have not already done so, defendants shall produce the WIP database in native format, as they have agreed to do.[86] Plaintiff's reply brief also states that defendants have failed to produce certain documents in native format.[87] It is unclear whether this request was the subject of a formal request for production,[88] and the court cannot determine whether plaintiff originally moved to compel production of this electronically stored information.[89] Because of this, the court will not compel production of this electronically stored information at this time.

**IV.**     **Plaintiff's Motion to Strike**

---

[85] *See* Defs.' Resp. to Pl.'s Mot. to Compel at 11, ECF No. 49.

[86]  *See id.*

[87] Reply in Supp. of Pl.'s Mot. to Compel at 12, ECF No. 58.

[88] *See Continental Cas. Co. v. Multiservice Corp.*, No. 06-2256-CM, 2008 WL 73345, at *8 (D. Kan. Jan. 7, 2008) (explaining that the court will not compel a party to respond to an informal discovery request).

[89] *See Minshall v. McGraw Hill Broadcasting Co.*, 323 F.3d 1273, 1288 (10th Cir. 2003) (stating that an argument raised for the first time in a reply brief is waived) (citing *Coleman v. B-G Maint. Mgmt.*, 108 F.3d 1199, 1205 (10th Cir. 1997) ("Issues not raised in the opening brief are deemed abandoned or waived")).

After the parties had fully briefed this motion, defense counsel sent an e-mail to the undersigned's chambers and attached a Kansas Court of Appeals opinion that had been released before plaintiff filed his motion to compel. The e-mail states that the opinion may have relevance to the attorney-client privilege issue, but it fails to state how exactly the opinion applies.[90] In fact, the opinion is not on point. Moreover, the appropriate procedure for attempting to present additional authority to the court would have been for defense counsel to move for leave to file a surreply.[91] Plaintiff's motion to strike is granted.

Accordingly,

**IT IS THEREFORE ORDERED** that Plaintiff Wayne B. Herrmann's Motion to Compel (ECF No. 43) is hereby granted in part and denied in part.

**IT IS FURTHER ORDERED** that within fourteen (14) days from the date of this order, defendants shall supplement their responses to the discovery requests as directed in this Memorandum and Order.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike, or in the Alternative, for Leave to Respond to Defendants' Letter (ECF No. 64) is hereby granted.

**IT IS SO ORDERED.**

Dated this 11th day of April, 2012, at Topeka, Kansas.

s/ K. Gary Sebelius
K. Gary Sebelius
U.S. Magistrate Judge

---

[90] *See* e-mail from Paul McCausland to the magistrate judge at 5, ECF No. 65.

[91] *See In re United Telecommunications, Inc., Sec. Litig.*, No. 90-2251-EEO, 1993 WL 100202, at *4 (D. Kan. Mar. 4, 1993).

27